IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VINCENT E. JUNE. JR.,                :

    Plaintiff,                      :

v.                                   :        Civil Action No. GLR-14-2450

OFFICER E. THOMASSON,                :

    Defendant.                      :

### MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Vincent E. June's Motion to Alter or Amend Judgment (ECF No. 45). As of January 2016, the Motion was fully briefed and ripe for disposition. The Court held a hearing on July 6, 2016. (ECF No. 49). Following the hearing, the parties submitted supplemental briefs. Having reviewed all the briefs, the Court finds no additional hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

### I.   BACKGROUND

In September 2011, Defendant Officer E. Thomasson arrested June in connection with an assault against victim Antonio Goodwin in Anne Arundel County, Maryland. (Compl. ¶ 14, ECF No. 1). In March 2012, the State of Maryland dismissed the criminal charges against June after he successfully asserted an alibi defense. (Id. ¶ 16). In July 2014, June sued Officer Thomasson

under 42 U.S.C. §§ 1983, 1985, and 1988 for malicious prosecution in violation of the Fourth and Fourteenth Amendments. (Compl.).

During discovery, Officer Thomasson obtained affidavits from Goodwin and his mother Brenda Goodwin ("Mrs. Goodwin"). (See ECF Nos. 27-3, 27-4). These affidavits are hand-written "statements" comprising a series of questions and answers. (Id.). They state that they were taken by Jay Creech, co-counsel for Officer Thomasson. (Id.).

In her affidavit, Mrs. Goodwin asserts that when the police came to the Goodwin residence to take a statement from her son, Goodwin stated that "Vincent" was involved in the assault. (ECF No. 27-4 at 2). She then explains that the police returned a day or two later with a photo array and Goodwin identified an individual in the array as someone who attacked him. (Id. at 3). Officer Thomasson maintains Goodwin identified June in the photo array, and June does not dispute that Goodwin signed beneath June's photo. (See Def.'s Mem. Supp. Mot. Summ. J at 7, ECF No. 27-1); (see also ECF No. 27-5) (photo array).

In his April 1, 2015 affidavit ("Goodwin's First Affidavit"), Goodwin confirms his mother's account of his interaction with the police during the investigation. Goodwin asserts that a day or two after the assault, he dictated a written statement in which he identified June as one his

2

attackers and he picked June's photo out of an array when asked to identify someone who assaulted him.  (ECF No. 27-3 at 1-2). Goodwin also declares that the police told him neither what to write in the statement nor which photo to pick.  (Id.).  The name "Antonio Goodwin" or the initials "AG" appear next to all eighteen answers in Goodwin's First Affidavit.  (Id. at 1-3). The affidavit is signed, and Goodwin does not deny that the signature is his.  (Id. at 3).

Officer Thomasson produced Mrs. Goodwin's affidavit and Goodwin's First Affidavit to June on April 13, 2015.  (See ECF No. 45-4).  On May 7, 2015, June notified Officer Thomasson that June would depose Goodwin on May 21, 2015.  (See ECF No. 35-3 at 1-2).  But June cancelled the deposition on May 20, 2015 -- the day before it was supposed to occur.  (See id. at 3).  The parties did not depose Goodwin or his mother during discovery.

Discovery ended on May 26, 2015.  (See ECF No. 20 at 2). On June 23, 2015, Officer Thomasson moved for summary judgment. (ECF No. 27).  Officer Thomasson supported his Motion with Mrs. Goodwin's affidavit and Goodwin's First Affidavit.  On July 10, 2015, June filed his opposition to Officer Thomasson's Motion for Summary Judgment.  (ECF No. 28).  June supported his opposition with a second affidavit from Goodwin ("Goodwin's Second Affidavit").  (ECF No. 28-7).  June secured Goodwin's

Second Affidavit on June 12, 2015 -- almost three weeks after the close of discovery. (Id.).

In his Second Affidavit, Goodwin contradicts almost every factual assertion in his First Affidavit. Indeed, Goodwin states that he "never brought up . . . June's name or even said Vincent to the police;" rather, it was the police that first mentioned June. (Id. at 3). In fact, Goodwin asserts, the police asked about June so many times that Goodwin finally agreed that June was present for the assault because Goodwin thought the officers must have possessed evidence inculpating June. (Id.). Goodwin then states that he signed his name next to June's photo after the officer "asked [him] if [he] generally recognized anyone, not if [he] recognized anyone involved in the assault." (Id.). Goodwin further states that the police made him believe that they would not leave him alone until he identified June as one of the assailants. (Id. at 4). As for his First Affidavit, Goodwin asserts that it is "not valid" and he "revoke[s]" it because he "did not knowingly sign, nor did [he] understand what [he] was signing." (Id.). Finally, Goodwin declares that he does not believe June participated in the assault and the police intentionally led him to believe June was involved. (Id.).

On July 23, 2015, Officer Thomasson moved to strike Goodwin's Second Affidavit. (ECF No. 32). On November 18,

4

2015, the Court granted Officer Thomasson's Motion to Strike on two alternative grounds.   First, the Court concluded Goodwin's Second Affidavit was a sham (Memo Op. at 8–9, ECF No. 40). Second, the Court found that a Rule 37(c)(1) analysis militated in favor of excluding Goodwin's Second Affidavit as a sanction for June's failure to timely supplement his discovery responses. (Id. at 10–11).   Relying on Goodwin's First Affidavit, the Court then concluded as a matter of law that Officer Thomasson had probable cause to arrest June.   (Id.).   Thus, the Court granted Officer Thomasson's Motion for Summary Judgment and directed the Clerk to close the case.[1]

---

[1] In the final footnote in its November 18, 2015 Memorandum Opinion, the Court addressed Officer Thomasson's qualified immunity argument -- an argument the Court characterized as "not central" to Officer Thomasson's Motion for Summary Judgment because he first raised it in his reply brief. (Memo Op. at 14 n.3, ECF No. 40).   The Court concluded that because there was probable cause for June's arrest, Officer Thomasson would be protected by qualified immunity.   (Id.).   Officer Thomasson argued during the July 6, 2016 motions hearing, and he continues to argue, that by finding qualified immunity, the Court is somehow barred from reconsidering the rulings in its November 18, 2015 Order.   The Court disagrees for at least two reasons.
   First, the Court need not have addressed Officer Thomasson's qualified immunity argument at the summary judgment stage because by waiting to present it in his reply brief, he waived it.   See Sher v. Luxury Mortg. Corp., No. ELH-11-3656, 2012 WL 5869303, at *9 n.11 (D.Md. Nov. 19, 2012) (concluding defendant's argument was waived because defendant did not raise it until reply brief); see also Marshall v. James B. Nutter & Co., 816 F.Supp.2d 259, 264 (D.Md. 2011) ("This Court has previously held that 'the ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.'" (quoting Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 735 (D.Md.

On December 16, 2015, June filed a timely Motion to Alter or Amend Judgment under Rule 59(e) (ECF No. 45). Officer Thomasson filed an Opposition on December 21, 2015 (ECF No. 46), and June submitted a Reply on January 7, 2016 (ECF No. 47). After reviewing the parties' briefs, the Court held a motions hearing on July 6, 2016. (ECF No. 49). Following the hearing, the Court issued an order reopening discovery for the limited purpose of resolving June's Motion to Alter or Amend. (ECF No. 50). The Court gave the parties forty-five days to take depositions regarding any facts that would have been discoverable had the parties taken Goodwin's deposition during discovery, including, but not limited to, the circumstances surrounding the creation of Goodwin's First and Second Affidavits. (Id.).

During the renewed discovery period, the parties deposed Mrs. Goodwin on August 2, 2016, but they did not depose her son. Officer Thomasson explains that he attempted to subpoena Goodwin for a deposition, but Goodwin refused to attend. According to

---

2006))). Second, the Court found Officer Thomason would be entitled to qualified immunity because it also found as a matter of law that Officer Thomasson had probable cause to arrest June. In his Motion to Alter or Amend, June asks the Court to reconsider whether the Court erred in finding probable cause. Because the Court's conclusion on qualified immunity was predicated on its analysis of probable cause, the Court finds no reason why it would be foreclosed from reconsidering probable cause. For that matter, there is nothing barring the Court from reconsidering qualified immunity, either.

Officer Thomasson, Goodwin called Officer Thomasson on July 28, 2016 to tell him that he would not travel to Maryland from Philadelphia, Pennsylvania, where he temporarily resides, because he has an outstanding arrest warrant in Maryland.  (See Suppl. Def.'s Opp'n Pl.'s Mot. Alter or Am. J. at 1–2, ECF No. 55).  Officer Thomasson did not move the Court to enforce the subpoena or hold Goodwin in contempt.

On September 6, 2016, Officer Thomasson supplemented his Opposition to June's Motion to Alter or Amend Judgment.  (ECF No. 55).  June responded on September 16, 2016 (ECF No. 56), and Officer Thomasson replied on September 29, 2016 (ECF No. 57).

## II.  DISCUSSION

### A.  Rule 59(e) Standard

The Court may only alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'"  Id. (quoting Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)).  Litigants may not use Rule 59(e) motions to "relitigate

old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Id. (quoting 11 Charles Alan Wright, et al., Federal Practice & Procedure § 2810.1, at 127–28 (2d ed. 1995)). Stated alternatively, "[w]here a motion does not raise new arguments, but merely urges the court to 'change its mind,' [Rule 59(e)] relief is not authorized." Medlock v. Rumsfeld, 336 F.Supp.2d 452, 470 (D.Md. 2002), aff'd, 86 F.App'x 665 (4th Cir. 2004). Altering or amending a final judgment "is an extraordinary remedy which should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (citation omitted).

When a party argues that Rule 59(e) relief is necessary to correct a clear error of law or to prevent manifest injustice, mere disagreement with the Court's previous decision will not suffice. U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quoting Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993)). Rather, to justify altering or amending a judgment on this basis, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" Fontell v. Hassett, 891 F.Supp.2d 739, 741 (D.Md. 2012) (alteration in original) (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009)). In other words, the Court's previous judgment must be

8

"dead wrong." Franchot, 572 F.3d at 194 (citation omitted). Hence, a "factually supported and legally justified" decision does not constitute a clear error of law. See Hutchinson v. Staton, 994 F.2d 1076, 1081–82 (4th Cir. 1993). Additionally, to show manifest injustice, June must demonstrate an error that is "direct, obvious, and observable." Register v. Cameron & Barkley Co., 481 F.Supp.2d 479, 480 n.1 (D.S.C. 2007).

**B. Analysis**

June concentrates on the third prong of the Rule 59(e) standard, arguing the Court clearly erred as a matter of law when it (1) struck Goodwin's Second Affidavit under the sham affidavit doctrine, (2) excluded Goodwin's Second Affidavit under Rule 37(c)(1), and (3) concluded Officer Thomasson had probable cause to arrest June.[2]   The Court will address these issues in turn.

**1. Sham Affidavit**

In its November 18, 2015 Memorandum Opinion, the Court concluded Goodwin's Second Affidavit was a sham because it flatly contradicted Goodwin's First Affidavit and June did not produce it until he opposed Officer Thomasson's Motion for

---

[2] June also contends it is genuinely disputed whether Officer Thomasson learned of June's alibi prior to seeking charges. The Court, however, has already ruled that this material fact is not genuinely disputed. Because June simply urges the Court to change its mind, the Court need not address June's argument. See Medlock, 336 F.Supp.2d at 470.

Summary Judgment.  June contends the Court clearly erred when it ignored June's explanation for the contradictions between Goodwin's First and Second Affidavits.  June argues the Court must consider contradictory affidavits when resolving a summary judgment motion as long as the party presenting the affidavits explains the contradictions.  June further asserts that the Court must take Goodwin's Second Affidavit "at face value" because to do otherwise would be to assess the credibility of Goodwin's affidavits.  (ECF No. 45 at 4).

Officer Thomasson contends June's arguments are barred because the parties already litigated these issues.  The Court disagrees because June is careful to focus his arguments on the manner in which the Court applied the sham affidavit doctrine in its Memorandum Opinion -- June could not have advanced these arguments before the Court issued its Memorandum Opinion.

The Court first addresses whether the sham affidavit doctrine permits a Court to consider contradictory affidavits when the party presenting them explains the contradiction.  In the Fourth Circuit, the genesis of the sham affidavit doctrine is Barwick v. Celotex Corp., 736 F.2d 946 (4th Cir. 1984).  There, the plaintiff sued multiple defendants alleging personal injuries due to asbestos exposure.  Id. at 948.  The plaintiff was deposed on two separate occasions.  Id. at 959.  In attempt to "resurrect" his case when confronted with motions for summary

judgment, the plaintiff prepared an affidavit that contradicted much of his prior deposition testimony. Id. at 959-60. The district court disregarded the affidavit and granted summary judgment for the defendants. Id. at 952. The Fourth Circuit affirmed, concluding "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 960 (quoting Perma Research and Dev. Co. v. Singer, 410 F.2d 572, 578 (2d Cir. 1969)). The Fourth Circuit added that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Id. (quoting Radobenko v. Automated Equip. Co., 520 F.2d 540, 544 (9th Cir. 1975)).

Fifteen years after Barwick, in Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the Supreme Court of the United States added an additional wrinkle to the sham affidavit doctrine. The Barwick court did not explicitly address whether a party could rely on a contradictory affidavit to defeat summary judgment if the party explained the contradictions. Nevertheless, in Cleveland, the Supreme Court cited Barwick for the proposition that a party may rely on contradictory affidavits when opposing summary judgment as long

as the party _explains_ the contradictions: "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) _without explaining_ the contradiction or attempting to resolve the disparity."  526 U.S. at 806 (emphasis added).

The Fourth Circuit has yet to incorporate the above-quoted language from _Cleveland_ into any of its published opinions.[3] Yet, this Court regularly cites and applies this language when considering whether an affidavit is a sham.[4]  Thus, the Court concludes it must not strike a contradictory affidavit as sham if the party presenting it explains the contradictions.

The next question becomes, then, whether any explanation suffices.  June argues the explanation need only adequately

---

[3] The Court has incorporated this language into three non-binding unpublished opinions.  _See_ _Genesis Office Sys., Inc. v. PNC Bank, N.A._, 639 F.App'x 939, 941 (4th Cir. 2016); _Lyons v. Shinseki_, 454 F.App'x 181, 185 (4th Cir. 2011); _Chao v. Self Pride, Inc._, 232 F.App'x 280, 285 (4th Cir. 2007).

[4] _See, e.g._, _Atkins v. Burwell_, No. JFM-15-2198, 2016 WL 4399304, at *6 (D.Md. Aug. 17, 2016); _Morataya v. Nancy's Kitchen of Silver Spring, Inc._, No. GJH-13-01888, 2015 WL 4459387, at *4 n.4 (D.Md. July 17, 2015); _Streiff v. Anne Arundel Cty. Bd. of Educ._, No. CCB-13-845, 2014 WL 7212604, at *4 (D.Md. Dec. 18, 2014); _E.E.O.C. v. Greystar Mgmt. Servs. L.P._, No. ELH-11-2789, 2013 WL 6731885, at *21 (D.Md. Dec. 18, 2013); _Zimmerman v. Novartis Pharm. Corp._, 287 F.R.D. 357, 362 (D.Md. 2012); _E.E.O.C. v. Greater Balt. Med. Ctr., Inc._, 769 F.Supp.2d 843, 850 (D.Md. 2011), _aff'd_, 477 F.App'x 68 (4th Cir. 2012).

resolve the contradictions between affidavits. Officer Thomasson relies on Cleveland to argue an explanation only suffices if a reasonable juror could assume the truth of, or the affiant's good-faith belief in, the contradictory statements in the earlier affidavit.

The Court rejects Officer Thomasson's position because Cleveland is inapposite. That case dealt with a plaintiff that first alleged in a Social Security Disability Insurance "(SSDI") application that she was "totally disabled" and later alleged in a lawsuit under the Americans with Disabilities Act ("ADA") that she was able to "perform the essential functions" of her job, with or without "reasonable accommodation." Cleveland, 526 U.S. at 807. Writing for the unanimous Court, Justice Breyer made clear that the Court granted certiorari to reconcile the "disagreement among the Circuits about the legal effect upon an ADA suit of the application for, or receipt of, disability benefits." Id. at 800. The Court held that "[t]o defeat summary judgment, th[e] explanation [for the contradictory statements] must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Id. at 807. While Officer Thomasson accurately articulates this holding, his

attempt to apply it to this case fails. Having scrutinized Cleveland, the Court finds no indication that the Supreme Court intended that its holding would apply outside cases dealing with SSDI applications that contradict ADA claims.

The parties cite no case, and the Court finds none, in which the Fourth Circuit discussed the type of explanation that is sufficient for a court to consider an affidavit with wholly contradictory factual assertions. The Court is not surprised that no such case exists because the Court agrees with June that ruling that one contradictory affidavit is a sham while the other is not is tantamount to determining one affidavit is more credible than the other. Credibility determinations are reserved for the factfinder. See Okoli v. City Of Balt., 648 F.3d 216, 231 (4th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986))). After thoroughly reviewing case law, the Court concludes that in the Fourth Circuit, the rule remains that an affidavit is not sham if the party presenting it "explain[s] the contradiction or attempt[s] to resolve the disparity." Zimmerman, 287 F.R.D. at 362 (quoting Cleveland, 526 U.S. at 806).

Here, June explains the reasons for the contradictions between Goodwin's affidavits. In fact, the explanations for the contradictions appear on the face of Goodwin's Second Affidavit. Goodwin explains that a county investigator prepared his First Affidavit outside his presence and without his input. (ECF No. 28-7 ¶¶ 11–17). The county investigator had a conversation with Mrs. Goodwin on the first floor of the Goodwin residence while Goodwin was upstairs. (Id. ¶ 12). Following the conversation, Mrs. Goodwin called her son downstairs and instructed that he sign the affidavit the county investigator prepared. (Id. ¶ 13). The county investigator neither discussed the assault with Goodwin nor explained the affidavit to him. (Id. ¶¶ 15, 16). Goodwin signed the affidavit because his mother implored him to do so out of her desire for the case to be terminated. (Id. ¶ 18). June repeated this explanation in his Opposition to Officer Thomasson's Motion for Summary Judgment. (See Pl.'s Opp'n Def.'s Mot. Summ. J. at 10–11, ECF No. 28).

Mrs. Goodwin's August 2, 2016 deposition testimony does nothing to rebut the explanation that Goodwin provided for his contradictory affidavits. Mrs. Goodwin did testify that she never told Antonio he had to sign his First Affidavit. (Mrs. Goodwin Dep. 18:4–6, ECF No. 57-1). But she also testified that she could not remember whether she was actually present when the county investigator prepared Goodwin's First Affidavit and

Goodwin signed it. (*Id.* 16:10–18). Without deposition testimony from Goodwin, the explanation for his contradictory affidavits stands unrefuted.

Officer Thomasson argues that even if the Court credits the explanation for the contradictory affidavits, the Court should strike both of Goodwin's affidavits, leaving the uncontroverted statements from Officer Thomasson, Mrs. Goodwin, and Officer DeLoatch that Goodwin gave June's name to the police. Officer Thomasson relies on <u>Williams v. Genex Servs., LLC</u>, 809 F.3d 103, 110 (4th Cir. 2015) and <u>Rohrbough v. Wyeth Labs., Inc.</u>, 916 F.2d 970, 976 (4th Cir. 1990), but neither of these cases support his position. In <u>Williams</u>, a Fair Labor Standards Act case, the Fourth Circuit observed that the plaintiff's resume belied the description of her job responsibilities that she provided in the context of the litigation. 809 F.3d 103, 110. But the Fourth Circuit never specified which exhibits the district court should have disregarded. <u>See id.</u> In <u>Rohrbough</u>, one of the plaintiff's expert witnesses swore an affidavit that contradicted the witness's deposition. 916 F.2d at 976. The Fourth Circuit held "that the district court was justified in disregarding the affidavit." <u>Id.</u> The court did not, however, address whether the district court should have also disregarded the witness's deposition testimony. <u>See id.</u>

The Court finds no cases in the Fourth Circuit that require the Court to strike both of Goodwin's affidavits. The Court adds that striking both of Goodwin's affidavits would be equivalent to ruling neither is credible, and the Court must not make credibility determinations. See Anderson, 477 U.S. at 255.

In sum, June offered an explanation for the contradictions between Goodwin's First and Second Affidavits. There is no requirement that the Court evaluate the reasonableness or plausibility of this explanation. Moreover, the Court must refrain from assessing Goodwin's credibility. Thus, the Court concludes it clearly erred when it discounted June's explanation and ruled Goodwin's Second Affidavit is a sham. Because June provided an explanation, the Court finds Goodwin's Second Affidavit is not a sham.

### 2.  Rule 37(c)(1) and Southern States

In its Memorandum Opinion, the Court concluded Rule 37(c)(1) was an alternate ground for disregarding Goodwin's Second Affidavit. The Court first determined that June violated Rule 26(e) when he failed to timely disclose Goodwin's Second Affidavit. The Court highlighted that Goodwin waited until two weeks after the close of discovery to secure Goodwin's Second Affidavit, and he did not disclose it to Officer Thomasson until approximately a month and a half after the close of discovery. The Court then applied the test from Southern States to rule

17

June's Rule 26(e) violation was not substantially justified or harmless because (1) Officer Thomasson was completely surprised by Goodwin's Second Affidavit, (2) Officer Thomasson had no ability to cure the surprise, and (3) Goodwin's testimony was of paramount importance.[5]

June contends the Court committed three clear errors of law when it ruled exclusion was appropriate under Rule 37(c)(1). First, June did not violate Rule 26(e) when he waited until filing his opposition to summary judgment to disclose Goodwin's Second Affidavit because that affidavit is attorney work-product.   Second, by ruling Goodwin's Second Affidavit was a complete surprise to Officer Thomasson, the Court made an improper credibility determination regarding Goodwin's affidavits and ignored that June maintained from the beginning of this case that Goodwin never gave June's name to the police. Third, the Court did not consider the third and fourth factors of the Southern States test.   Officer Thomasson asserts the Court should disregard June's arguments and deny Rule 59(e)

_____

[5] In Southern States, the Fourth Circuit set forth five factors a district court should consider when determining whether a failure to disclose was substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."   Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

relief because June is attempting to relitigate his case by
rehashing all the arguments he advanced unsuccessfully in his
opposition to Officer Thomasson's Motion to Strike.  The Court
agrees, but only with respect to June's first argument.  (See
ECF No. 34 at 12, 14 (arguing Goodwin's Second Affidavit is
attorney work-product)).  The Court addresses June's second and
third arguments below.

In his second argument, June attacks the Court's conclusion
that Goodwin's Second Affidavit was a complete surprise to
Officer Thomasson.  To review, in his Second Affidavit, Goodwin
testifies that a county investigator prepared Goodwin's First
Affidavit without his input and Goodwin signed it at the behest
of his mother without reading it.  June argues the Court must
have implicitly ruled Goodwin's First Affidavit is more credible
than his Second Affidavit because if his Second Affidavit were
true, Officer Thomasson would not have been at all surprised
that Goodwin changed his story.

On the contrary, however, the Court did not evaluate, much
less determine, the credibility of Goodwin's affidavits.
Instead, the Court found Goodwin's Second Affidavit was a
complete surprise for two principal reasons.  First, Goodwin's
Second Affidavit flatly contradicted not only his First
Affidavit, but also Mrs. Goodwin's affidavit and Goodwin's
written statement to the police (ECF No. 27-3 at 4).  Second,

19

June did not disclose Goodwin's Second Affidavit until almost a month and a half after the close of discovery. Officer Thomasson disclosed Goodwin's First Affidavit on April 13, 2015, which was almost a month and half before the close of discovery. At that time, June knew Officer Thomasson had a sworn statement from Goodwin in which he asserted that without any influence from the police, he identified June as one of his attackers. Yet June took no action in the remaining month and half of the discovery period to attempt to rebut the statements in June's First Affidavit. June scheduled Goodwin's deposition for May 21, 2015, but June cancelled it the night before. During discovery, June did not provide Officer Thomasson with any sworn statements from Goodwin that rebutted his First Affidavit. So, when June disclosed Goodwin's Second Affidavit in July 2015, it was, indeed, a complete surprise.

June further contends that when the Court ruled Goodwin's Second Affidavit was a complete surprise, the Court overlooked that June asserted on five separate occasions that Goodwin never gave June's name to the police. In his Complaint, June asserts that Goodwin "did not identify [June] as someone that participated in the attack." (Compl. ¶ 11). In his answer to interrogatory number 5, June asserted that Mrs. Goodwin told June's parents that when the police presented the photo array to Goodwin, they asked him to identify anyone that he knew, not

anyone involved in the assault. (ECF No. 45-1 at 6-7). In his answers to interrogatory numbers 20 and 21, June stated that Goodwin will testify that he never introduced June's name into the investigation and one of the suspects in the assault case told the police several times that June was not involved. (Id. at 15-16). Finally, in an April 24, 2015 letter to defense counsel, June asserted that he "realize[d] that Mr. Goodwin and his mother [were] attempting to recant on the information previously secured by [June]."

All the foregoing assertions share at least one element in common: they are not sworn statements from Goodwin. June may have asserted on several occasions that Goodwin never identified June as one of his attackers and would testify to the same, but before submitting his opposition to summary judgment, June never produced a sworn statement from Goodwin in which he denied identifying June. Officer Thomasson, however, obtained and disclosed Goodwin's First Affidavit in which Goodwin states that he did identify June as one of the assailants. Because Officer Thomasson received no sworn testimony to refute Goodwin's First Affidavit -- which Goodwin signed under the penalties of perjury -- Goodwin's Second Affidavit was surely a complete surprise.

June's third, and final, argument for why the Court clearly erred in excluding Goodwin's Second Affidavit under Rule 37(c)(1) is that the Court ignored the third and fourth elements

of the Southern States test.  The Court disagrees that this was a clear error of law because district courts have "broad discretion" to decide whether a nondisclosure of evidence is substantially justified or harmless and they are not required to "tick through each of the Southern States factors."  Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

### a.   Updated Southern States Analysis

At this point, the Court has concluded that it clearly erred when it ruled Goodwin's Second Affidavit was a sham, but it did not clearly err when it excluded that affidavit based on Rule 37(c)(1) and Southern States.  The only issue that remains is whether the Court clearly erred when it concluded there was probable cause for June's arrest.  Before the Court can address this final issue, however, it must resolve one threshold matter: whether the Southern States test still supports excluding Goodwin's Second Affidavit.  The sham affidavit doctrine and the Southern States test are alterative grounds for striking Goodwin's Second Affidavit.  Hence, if nothing had changed since the Court's November 18, 2015 Memorandum Opinion, the Court would not consider Goodwin's Second Affidavit when assessing whether it clearly erred in concluding there was probable cause for June's arrest.  But circumstances have changed significantly, and not considering these changes would be manifestly unjust.  After the July 6, 2016 hearing, the Court

22

reopened discovery to permit the parties to take depositions regarding any facts that would have been discoverable had the parties taken Goodwin's deposition during discovery, including, but not limited to, the circumstances surrounding the creation of Goodwin's First and Second Affidavits.  (ECF No. 50).

Considering the present circumstances, Goodwin's Second Affidavit is no longer a surprise, and by reopening discovery, the Court gave Officer Thomasson an opportunity to cure the original surprise associated with that affidavit.  Because the Court has not yet scheduled a trial, there is no risk of disrupting a trial.  What is more, as the Court observed in its Memorandum Opinion, the statements in Goodwin's Second Affidavit are of the utmost importance because they concern the central material fact of whether Goodwin identified June as one of his assailants.  See Doe v. AE Outfitters Retail Co., No. WDQ-14-0508, 2015 WL 132609, at *4 (D.Md. Jan. 8, 2015) (concluding fourth Southern States factor supported considering withheld evidence because the evidence might be important to plaintiff's claims).  Thus, after updating the first two factors of the Southern States test by incorporating present circumstances, and coupling that with the third and fourth factors, the Court concludes that exclusion is no longer warranted under Rule 37(c)(1).  Accordingly, because neither the sham affidavit doctrine nor Rule 37(c)(1) provide a basis for the Court to

strike Goodwin's Second Affidavit, the Court will consider that affidavit when resolving whether it clearly erred in concluding Officer Thomasson had probable cause to arrest June.

### 3. Probable Cause

In its Memorandum Opinion, the Court concluded there was probable cause for June's arrest because there was no genuine dispute that Goodwin gave June's name to the police and identified June in a photo array when asked to identify anyone involved in the assault. (ECF Nos. 40, 41). June contends that as a direct consequence of erroneously excluding Goodwin's Second Affidavit -- a clear error of law that the Court has now conceded -- the Court committed a further clear error of law when it ruled there was probable cause.

In his Motion for Summary Judgment, Officer Thomasson argued there was probable cause since it was undisputed that Goodwin identified June as one his assailants. To be sure, Goodwin identified June in Goodwin's written statement to the police, (see ECF No. 27-3 at 4), and in his First Affidavit, (see id. at 1–3). Goodwin also selected June's photo out of an array. (See id. at 5). In his Second Affidavit, however, Goodwin disputes that he identified June as one of his attackers. Goodwin asserts that the police introduced June's name into the conversations and Goodwin only selected June's photo after the officers asked him to identify anyone he

recognized.    (ECF  No.  28-7  ¶¶  20-23,  27-29).    Relying  on
testimony  consistent  with  Goodwin's  Second  Affidavit,  a
reasonable  jury  could  find  Officer  Thomasson  did  not  have
probable  cause  to  arrest  June.    Thus,  the  Court  concludes  it
clearly  erred  when  it  granted  Officer  Thomasson's  Motion  for
Summary Judgment.

### III. CONCLUSION

For  the  foregoing  reasons,  June's  Motion  to  Alter  or  Amend
Judgment  (ECF  No.  45)  is  GRANTED.    The  Court's  November  18,  2015
Order  entering  summary  judgment  for  Officer  Thomasson  is
VACATED.    Officer  Thomasson's  Motion  for  Summary  Judgment  (ECF
No.  27)  is  DENIED WITHOUT PREJUDICE.    A separate  order  follows.
Entered this 20th day of December, 2016

/s/
_____
George L. Russell, III
United States District Judge

25