IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VINCENT E. JUNE, JR.,                    :

      Plaintiff,                        :

v.                                       :          Civil Action No. GLR-14-2450

OFFICER E. THOMASSON,                    :

      Defendant.                        :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Officer Eric Thomasson's

("Officer Thomasson") Motion to Alter or Amend the Court's December 20, 2016 Order

(ECF No. 62). The Motion is fully briefed and ripe for disposition. No hearing is

necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court

will deny the Motion because it is untimely. The Court, however, will also sua sponte

reconsider its December 20, 2016 Order and after conducting a full qualified immunity

analysis, again deny Officer Thomasson's Motion for Summary Judgment (ECF No. 27).

## I.    PROCEDURAL BACKGROUND[1]

On July 31, 2014, Plaintiff Vincent E. June, Jr. brought a federal civil rights action

against Officer Thomasson, raising one count of malicious prosecution. (Compl., ECF

No. 1). June alleged specifically that Officer Thomasson violated his Fourth Amendment

right to be free from unreasonable seizures that occur when an officer deliberately, or

_____

[1] The Court discussed the factual background of this case in its November 18,
2015 and December 20, 2016 Memorandum Opinions (ECF Nos. 40, 59). The Court
does not repeat that factual background here.

with reckless disregard for the truth, makes material false statements or omits material facts in a warrant application. (See id. ¶¶ 11–13, 15, 21). Officer Thomasson answered on December 8, 2014, asserting qualified immunity as an affirmative defense. (Answer at 4, ECF No. 9).

Officer Thomasson filed a Motion for Summary Judgment on June 23, 2015, attaching Goodwin's First Affidavit[2] for support that Officer Thomasson had probable cause to arrest June. (ECF Nos. 27, 27-3). Officer Thomasson neither argued nor attempted to demonstrate why he was entitled to qualified immunity.

On July 10, 2015, June filed his Opposition to the Motion for Summary Judgment, attaching Goodwin's Second Affidavit in support. (ECF Nos. 28, 28-7). In Goodwin's Second Affidavit, victim Antonio Goodwin completely contradicts almost every factual assertion in his First Affidavit, including the material fact of whether Goodwin identified June as one of his attackers. (See Goodwin 2d Aff. at 2–4, ECF No. 28-7). Goodwin, however, explained in his Second Affidavit that the statements in his Second Affidavit contradict those in his First Affidavit because an Anne Arundel County investigator prepared the First Affidavit outside Goodwin's presence and without Goodwin's input. (Id. ¶¶ 11–17). According to Goodwin, the County investigator did not review the contents of the First Affidavit with Goodwin, and Goodwin signed the First Affidavit without reading it because his mother implored him to do so out of her desire to end the matter. (Id. ¶¶ 15, 16, 18).

---

[2] Capitalized terms retain their definitions from previous Opinions.

On July 23, 2015, Officer Thomasson filed his Reply in further support of his Motion for Summary Judgment, arguing—for the first time—that he was entitled to qualified immunity. (See ECF No. 31 at 7–10). Officer Thomasson also attached an affidavit from Officer Levar DeLoatch ("Officer DeLoatch"), in which Officer DeLoatch states that while speaking to Goodwin on August 30, 2011, Goodwin advised him that "an individual named Vincent was also involved in [Goodwin's] assault" and "Vincent is a friend of" one of the alleged assailants. (DeLoatch Aff. at 1, ECF No. 31-1). Officer DeLoatch further states that he "relayed this information to Officer Thomasson." (Id.).

Also on July 23, 2015, Officer Thomasson moved to strike Goodwin's Second Affidavit. (ECF No. 32). On August 10, 2015, June filed a Motion to Strike New Arguments Made in Defendant's Reply or, in the Alternative, Motion for Leave to File Surreply. (ECF No. 33). On October 21, 2015, the Court granted in part and denied in part Officer Thomasson's Motion for Leave to File Surreply. (ECF No. 38). The Court granted June seven days to file a surreply addressing only Officer DeLoatch's affidavit and Officer Thomasson's qualified immunity argument. (Id.). On October 28, 2015, June filed a timely Surreply in Opposition to Officer Thomasson's Motion for Summary Judgment. (ECF No. 39).

On November 18, 2015, the Court granted Officer Thomasson's Motion to Strike on two alternative grounds. First, the Court concluded that Goodwin's Second Affidavit was a sham (Mem. Op. at 8–9, ECF No. 40). Second, the Court found that an exclusion analysis under Federal Rule of Civil Procedure 37(c)(1) militated in favor of excluding

3

Goodwin's Second Affidavit as a sanction for June's failure to timely supplement his discovery responses. (Id. at 10–11). Relying on Goodwin's First Affidavit, and the other evidence that the Parties presented, the Court then concluded as a matter of law that Officer Thomasson had probable cause to arrest June. (Id. at 11–14). In a footnote near the end of the Court's Memorandum Opinion resolving Officer Thomasson's Motions to Strike and for Summary Judgment, the Court addressed Officer Thomasson's qualified immunity argument—an argument that Officer Thomasson did not raise until his Reply in support of summary judgment. The Court concluded that Officer Thomasson would be protected by qualified immunity because based on the undisputed record evidence, Officer Thomasson was entitled to judgment as a matter of law on the first prong of the qualified immunity analysis.[3] (Id. at 14 n.3). The Court then granted Officer Thomasson's Motion for Summary Judgment and directed the Clerk to close the case.

On December 16, 2015, June filed a timely Motion to Alter or Amend Judgment under Rule 59(e) (ECF No. 45). After reviewing the parties' briefs, the Court held a motions hearing on July 6, 2016. (ECF No. 49). Following the hearing, the Court reopened discovery for the limited purpose of resolving June's Motion to Alter or Amend. (ECF No. 50). The Court gave the parties forty-five days to take depositions regarding any facts that would have been discoverable had the parties taken Goodwin's deposition during discovery, including, but not limited to, the circumstances surrounding

---

[3] Below, the Court discusses the analytical framework for qualified immunity in greater detail.

the creation of Goodwin's First and Second Affidavits. (Id.). Following the renewed discovery period, the parties supplemented their briefs regarding the Motion to Alter or Amend. (See ECF Nos. 55–57).

On December 20, 2016, the Court granted June's Motion to Alter or Amend Judgment. (ECF No. 60). After reviewing United States Supreme Court and Fourth Circuit precedent regarding the sham affidavit rule, the Court concluded that it clearly erred when it discounted Goodwin's explanation for the contradictions in his Second Affidavit and ruled that the affidavit was a sham. (Mem. Op. at 9–17, ECF No. 59). The Court then conducted a renewed analysis under Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592 (4th Cir. 2003), concluding that excluding Goodwin's Second Affidavit under Rule 37(c)(1) was no longer warranted. (Id. at 22–23). The Court next concluded that "relying on testimony consistent with Goodwin's Second Affidavit, a reasonable jury could find Officer Thomasson did not have probable cause to arrest June." (Id. at 25). The Court did not address qualified immunity because as the Court explained in an earlier footnote in its Memorandum Opinion, Officer Thomasson waived that argument. (Id. at 5 n.1).

Because the Court concluded that a reasonable jury could find that Officer Thomasson did not have probable cause to arrest June, the Court further concluded that it clearly erred when it granted Officer Thomasson's Motion for Summary Judgment. (Id. at 25). Accordingly, the Court vacated its Order entering summary judgment for Officer

Thomasson and denied Officer Thomasson's Motion for Summary Judgment without prejudice.  (Id.).

Officer Thomasson filed the present Motion to Alter or Amend on January 12, 2017, asking the Court to alter or amend its December 20, 2016 Order granting June's Motion to Alter or Amend.  (ECF No. 62).  The present Motion was fully briefed as of February 7, 2017.  (See ECF Nos. 63–64).

## II.    DISCUSSION

**A.    Officer Thomasson's Motion to Alter or Amend**

**1.    Standard of Review**

Officer Thomasson moves under Rule 59(e), which applies only to final judgments.  Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991).  The Court may only alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'"  Id. (quoting Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)).  Altering or amending a final judgment "is an extraordinary remedy which should be used sparingly."  Id. (citation and internal quotation marks omitted).

## 2.    Analysis

Officer Thomasson asks the Court to alter or amend its December 20, 2016 Order, but he does not appear to argue in favor of any of the three circumstances permitting relief under Rule 59(e).  Instead, Officer Thomasson argues that the Court should rule on qualified immunity because that issue was fully briefed and under long-standing Supreme Court and Fourth Circuit precedent, Officer Thomasson is entitled to a ruling on qualified immunity before trial.

In response, June advances three main arguments.  First, Officer Thomasson's Motion is untimely because Officer Thomasson challenges an interlocutory order, not a final order, and Officer Thomasson filed his Motion more than fourteen days after the Court entered the December 20, 2016 interlocutory Order.  Second, Officer Thomasson waived his qualified immunity argument by failing to raise it until his Reply in support of summary judgment.  Third, even if Officer Thomasson did not waive his qualified immunity argument, Officer Thomasson is not entitled to qualified immunity.  The Court will first address June's timeliness argument.

### a.    Timeliness of Officer Thomasson's Motion

June is correct that the Court's December 20, 2016 Order is an interlocutory order—not a final order.  Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 402 F.Supp.2d 617, 619 (M.D.N.C. 2005) ("The court's denial of summary judgment is an interlocutory order.").  Rule 54(b)—not Rule 59(e)—governs motions to reconsider interlocutory orders.  See Fayetteville, 936 F.2d at 1470 (finding district court properly

7

reconsidered interlocutory order under Rule 54(b)).  The Court concludes, thus, that Rule 54(b) governs Officer Thomasson's Motion.

Rule 54(b) and 59(e) motions have different filing deadlines.  Litigants must file Rule 59(e) motions no later than twenty-eight days after the entry of the final judgment. Fed.R.Civ.P. 59(e).  Litigants must file Rule 54(b) motions no later than fourteen days after entry of the interlocutory order.  <u>See</u> Local Rule 105.10 (D.Md. 2016) ("Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order.").  Officer Thomasson filed his Motion on January 12, 2017— within the Rule 59 deadline, but almost 10 days after the Rule 54(b) deadline.  (ECF No. 62).  The Court, therefore, will deny Officer Thomasson's Motion because it is untimely.

### b.    Other Bases for Reconsidering the December 20, 2016 Order

The Court notes that although Officer Thomasson's Rule 54(b) Motion is untimely, there are at least three bases under which the Court could either reconsider the Court's decision not to address qualified immunity in its December 20, 2016 Order or rule on qualified immunity now without reconsideration.

First, in the interest of not elevating form over substance, the Court could construe Officer Thomasson's Motion as a motion for summary judgment on qualified immunity. <u>See</u> <u>Monge v. Portofino Ristorante</u>, 751 F.Supp.2d 789, 792 n.1 (D.Md. 2010) (declining to exalt form over substance).  The Court denied Officer Thomasson's Motion for Summary Judgment <u>without prejudice</u>, thereby affording Officer Thomasson an

8

opportunity to bring another motion for summary judgment on the same legal issues. The Court, however, declines to construe Officer Thomasson's Motion as a motion for summary judgment. As June highlights, the Scheduling Order deadline for filing dispositive motions has long passed and the Parties have not briefed whether there is good cause under Rule 16(b)(4) for modifying the Scheduling Order to allow more time for dispositive motions practice. (See Order Granting Consent Mot. Modify Scheduling Order, ECF No. 20).

Second, under Local Rule 604 (D.Md. 2016), the Court may suspend the provisions of the Local Rules "[f]or good cause shown." In Harper v. Anchor Packing Co., this Court concluded that a clear error of law constitutes good cause to consider untimely motions for reconsideration because the "ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Nos. GLR-12-460 & GLR-12-462, 2014 WL 3828387, at *1 (D.Md. Aug. 1, 2014) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)) (internal quotation marks omitted), aff'd sub nom. Hurley v. CBS Corp., 648 F.App'x 299 (4th Cir. 2016). Thus, if the Court determined that it clearly erred as a matter of law in its December 20, 2016 Order by not ruling on qualified immunity, the Court could consider Officer Thomasson's untimely Rule 54(b) Motion. The Court, however, will not reconsider its December 20, 2016 Order on this basis.

Third, the Court could elect to sua sponte reconsider the Court's decision in its December 20, 2016 Order not to rule on qualified immunity. See Fayetteville, 936 F.2d

at 1472 (stating that under Rule 54(b), courts may review its own interlocutory orders sua sponte). Rule 54(b) expressly provides that interlocutory orders "may be revised at any time before the entry" of a final judgment. Indeed, "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe, 326 F.3d at 514–15. Because "the Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation,'" the Court will sua sponte reconsider the decision in its December 20, 2016 Order not to rule on qualified immunity. Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 330 (4th Cir. 2009) (alteration in original) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). The Court does so below.

**B.    Rule 54(b) Reconsideration**

**1.    Decision Not to Address Qualified Immunity**

The power to revise interlocutory orders "is committed to the discretion of the district court[.]" Am. Canoe, 326 F.3d at 515. Although the Rule 59(e) standard is not binding in an analysis of Rule 54(b) motions, see id. at 514, courts frequently look to that standard for guidance. Cezair v. JPMorgan Chase Bank, N.A., No. DKC 13-2928, 2014 WL 4955535, at *1 (D.Md. Sept. 30, 2014); see, e.g., Harper, 2014 WL 3828387, at *1 (applying Rule 59(e) standard to Rule 54(b) Motion). The Court will likewise use the Rule 59(e) standard for guidance and alter or amend its December 20, 2016 Order if: "(1) there has been an intervening change in controlling law; (2) there is additional evidence

that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Cezair, 2014 WL 4955535, at *1 (quoting Akeva, LLC v. Adidas Am., Inc., 385 F.Supp.2d 559, 565–66 (M.D.N.C.2005)) (internal quotation marks omitted).

In the context of motions for reconsideration, a court may find manifest injustice when it "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension[.]" Wagner v. Warden, No. ELH-14-791, 2016 WL 1169937, at *3 (D.Md. Mar. 24, 2016) (citation and internal quotation marks omitted). Furthermore, the Court's previous error must be "direct, obvious, and observable." Id. (citation and internal quotation marks omitted). As another district court in this Circuit has noted, "[c]ourts have applied the 'direct, obvious, and observable' definition [of manifest injustice] to a motion for reconsideration of interlocutory orders." United States v. Duke Energy Corp., No. 1:00CV1262, 2014 WL 4659479, at *5 (M.D.N.C. Sept. 17, 2014).

Here, the Court concludes that not ruling on qualified immunity in its December 20, 2016 Order was manifestly unjust because the issue of qualified immunity was fully briefed and the Fourth Circuit has adhered to the Supreme Court's instruction to rule on qualified immunity at the earliest possible stage of litigation.

As the Court explained above, the Court did not address Officer Thomasson's qualified immunity argument because the Court concluded that Officer Thomasson

waived it.  To be sure, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006).  But "[t]he concern that the ordinary rule addresses is 'that an opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond.'"  Id. at 735 (quoting United States v. Head, 340 F.3d 628, 630 n.4 (8th Cir. 2003)).  As a result, courts inside and outside the Fourth Circuit have considered issues that one party raises for the first time in a reply brief when the opposing party had an opportunity to either address the issue first or respond.  See, e.g., id. (considering issue first raised in reply memorandum where opposing party filed surreply addressing the issue); Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir. 2003) (same); United States v. Head, 340 F.3d 628, 630 n.4 (8th Cir. 2003) (reaching an issue first raised in a reply brief when opposing party addressed counterarguments in its opposition brief); Holloway v. Brush, 220 F.3d 767, 773–74 (6th Cir. 2000) (considering issue appellant initially raised in reply brief when appellee first argued issue in opposition brief).

June filed a Surreply addressing qualified immunity at length.  (ECF No. 39).  Thus, if the Court addressed qualified immunity in its December 20, 2016 Order, the Court would not have prejudiced June because he had a full opportunity to respond to Officer Thomasson's arguments in support of qualified immunity.

Because qualified immunity "is an immunity from suit rather than a mere defense to liability," the immunity "is effectively lost if a case is erroneously permitted to go to

trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court has "made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" Pearson v. Callahan, 555 U.S. 223, 231–32 (2009) (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). "Because the doctrine seeks to protect government officials from the burdens of trial" and trial preparation, courts must resolve qualified immunity questions "at the earliest possible stage in litigation." Cloaninger, 555 F.3d at 330 (quoting Hunter, 502 U.S. at 227) (internal quotation marks omitted); see Hunter, 502 U.S. at 228 ("Immunity ordinarily should be decided by the court long before trial."). "Thus, a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991); see Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

Considering that the Parties had fully briefed qualified immunity, it would have been "particularly appropriate" to rule on qualified immunity when reconsidering Officer Thomasson's Motion for Summary Judgment. Torchinsky, 942 F.2d at 261. But due to the Parties' focus on the sham affidavit doctrine and the exclusion analysis under Southern States, as well as Officer Thomasson's decision to wait to raise his qualified immunity argument until his Reply, the Court failed to apprehend fully the importance of ruling on qualified immunity at the earliest possible juncture. In light of the precedent

discussed above, the Court finds this error to be direct and obvious.  See Wagner, No. 2016 WL 1169937, at *3.

To correct the manifest injustice that the Court's December 20, 2016 Order created, the Court will use this opportunity to rule on qualified immunity.

## 2.    Qualified Immunity

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In the Fourth Circuit, courts should apply the qualified immunity doctrine "with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight." Gooden v. Howard Cty., 954 F.2d 960, 964–65 (4th Cir. 1992).

There is a two-prong test for determining whether a government official is protected by qualified immunity: (1) whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the purported violation.  Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Courts have discretion to resolve these two prongs in whatever order they consider appropriate based on the circumstances of the case at hand.  Id. at 236.  The answers to both prongs must be in the affirmative for a plaintiff to defeat a motion for summary judgment on qualified immunity grounds. Batten v. Gomez, 324 F.3d 288, 293–94 (4th Cir. 2003). The plaintiff bears the burden of

proof on the first prong, <u>Bryant v. Muth</u>, 994 F.2d 1082, 1086 (4th Cir. 1993); the defendant on the second, <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003).

### a. Violation of a Constitutional Right

In its December 20, 2016 Memorandum Opinion, the Court concluded that a reasonable jury could find that Officer Thomasson violated June's Fourth Amendment right to be free from seizures not supported by probable cause. The Court finds no error in that conclusion.

June sues Officer Thomasson under 42 U.S.C. § 1983 for malicious prosecution. To prevail on such a claim, a plaintiff must show that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." <u>Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012). The Parties focus only on the second element of this test; the Court follows suit.

June contends that though Officer Thomasson arrested him pursuant to a warrant, his arrest was not supported by probable cause because the warrant application was materially false. (<u>See</u> Compl. ¶¶ 11–13, 15, 21). The Fourth Circuit recognizes this specific type of malicious prosecution claim. <u>See</u> <u>Humbert v. Mayor of Balt.</u>, No. 15-1768, 2017 WL 3366349, at *4 (4th Cir. Aug. 7, 2017); <u>see also</u> <u>Miller v. Prince George's Cty.</u>, 475 F.3d 621, 627 (4th Cir. 2007). To succeed on his claim, June must demonstrate that Officer Thomasson "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit . . . or omitted from that affidavit

'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'"  Miller, 475 F.3d at 627 (internal citation omitted) (quoting United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)).

To show Officer Thomasson acted with reckless disregard, June must demonstrate that Officer Thomasson acted "with a high degree of awareness" that a statement he included in his warrant application was probably false. Id. (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)) (internal quotation marks omitted).  In other words, June must show that "when viewing all the evidence, [Officer Thomasson] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. (quoting Wilson, 212 F.3d at 788).  As for omissions, if any, June can establish "reckless disregard" by presenting evidence that Officer Thomasson "failed to inform the judicial officer of facts [he] knew would negate probable cause." Id. (alteration in original) (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)) (internal quotation marks omitted).

To be "material," the false statements or omissions must be "necessary to the [neutral and disinterested magistrate's] finding of probable cause." Id. at 628 (alteration in original) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)) (internal quotation marks omitted).  "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause.'" Id. (quoting Wilson, 212

F.3d at 789). "If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." Id.

In Officer Thomasson's warrant application, styled as an "Application for Statement of Charges" (the "Application"), the information relating to June is rather limited. (ECF No. 27-6). Near the end of the Application, Officer Thomasson writes that when meeting with Goodwin on August 31, 2011 as part of Officer Thomasson's ongoing investigation, "Goodwin gave a written statement about the assault." (Id. at 3). Officer Thomasson, however, never writes that in Goodwin's written statement, Goodwin identified June as one of the attackers. Officer Thomasson does not address June until the final two paragraphs of his three-page narrative. (Id.). Officer Thomasson writes that on August 31, 2011, Goodwin provided an address for "Vincent, another suspect." (Id.). Officer Thomasson does not explain, however, how Vincent became a "suspect." Officer Thomasson then writes that he traveled with another officer to the address that Goodwin provided and they "located a male that identified himself as Vincent June." (Id.). Officer Thomasson further writes that he then presented a photo array to Goodwin, who "was able to positively identify Vincent June." (Id.).

The Court reviews the record evidence to determine whether a reasonable juror could conclude that Officer Thomasson deliberately, or with reckless regard of the truth, made material false statements or omissions in the Application. See Miller, 475 F.3d at 627. Although the Application does not explain how June became a suspect, it is uncontroverted that before Officer Thomasson met with Goodwin on August 31, 2011,

Officer DeLoatch told Officer Thomasson that Goodwin had identified one of the attackers by first name only: "Vincent." (Officer DeLoatch Aff. at 1, ECF No. 31-1); (Officer Thomasson Aff. ¶ 5). It is also undisputed that before Officer Thomasson met with Goodwin on August 31, 2011, Officer Bembe told Officer Thomasson that the "Vincent" that Goodwin identified "might be" "Vincent June." (Officer Thomasson Aff. ¶ 5).

After Officer Thomasson learned that "Vincent" "might be" "Vincent June," Officer Thomasson assembled a photo array that included June's photograph and traveled to Goodwin's home. (Officer Thomasson Aff. ¶ 5). What transpired at Goodwin's home is disputed.

In his First Affidavit, Goodwin asserts that when the police visited his home after the assault, he dictated a written statement in which he identified June as one his attackers and he picked June's photo out of an array when asked to identify someone who assaulted him. (ECF No. 27-3 at 1–2). Goodwin also declares that the police told him neither what to write in the statement nor which photo to pick. (Id.).

According to Goodwin's Second Affidavit, while the police were at his home after the assault, Goodwin initially did not identify June as being involved in the assault because, based on Goodwin's memory, he did not believe that June was in fact involved. (Goodwin 2d Aff. ¶ 23). Before the police showed Goodwin a photo array, the police not only brought up June, but also asked Goodwin about him four or five times. (Id. ¶¶ 22, 25). Goodwin believed that "when the police keep asking you about the same person,

that constant questioning about one person means the police have something on that person tying them to what happened." (Id. ¶ 26). As a result, Goodwin finally agreed with the police and said June "was there." (Id. ¶ 25). The police then showed Goodwin a photo array and he signed his name next to June's photo after an officer "asked [him] if [he] generally recognized anyone, not if [he] recognized anyone involved in the assault." (Id. ¶ 29). As for his First Affidavit, Goodwin asserts that it is "not valid" and he "revoke[s]" it because he "did not knowingly sign, nor did [he] understand what [he] was signing." (Id. ¶ 34).

In determining whether, based on the foregoing record evidence, a reasonable jury could conclude that Officer Thomasson deliberately, or with reckless regard of the truth, made false statements or omissions in the Application, the Court finds Humbert, 2017 WL 3366349—a very recent opinion from the Fourth Circuit—to be instructive. In Humbert, a woman was raped in her home in Baltimore, Maryland. 2017 WL 3366349, at *1. During the criminal investigation that ensued, an officer from the Baltimore City Police Department ("BPD") met with the victim to generate a composite sketch of the attacker. Id. "[A]t some point either during or after completing the sketch," another officer showed the victim a photo on the officer's cellphone of a man that the officer identified as the attacker. Id. Several days later, BPD officers showed the victim a photobook to determine whether she could identify anyone in the book as her attacker. Id. at *2. Upon seeing the plaintiff's photo, the victim "became very emotional and started crying." Id. The victim then "jabbed the photo, said 'that's him,' and attempted

to push the photobook away." Id. The victim testified that the plaintiff "had some facial features similar to her attacker, which triggered her emotional response," and the plaintiff's photo looked like the photo the officer completing the sketch showed her several days before. Id. The victim also "wrote 'that's him' on the back of the photo and signed her name." Id. Later, however, the victim informed the officers "that she could not positively identify [the plaintiff] as her assailant because she needed to see him in a physical lineup and hear his voice." Id.

One of the BPD officers involved in the investigation nevertheless proceeded to apply for an arrest warrant for the plaintiff, stating in the warrant application that "the victim positively identified [the plaintiff] as her attacker." Id. Finding probable cause, a court commissioner issued an arrest warrant, and a BPD officer arrested the plaintiff. Id. About fifteen months after Humbert's arrest, the State of Maryland entered a nolle prosequi as to Humbert's charges and released Humbert from pretrial confinement. Id.

After his release from jail, Humbert sued several BPD officers for, among other claims, malicious prosecution under 42 U.S.C. § 1983. Id. at *3. Like June, Humbert alleged that the officers arrested him without probable cause by submitting a warrant application that was materially false. Id. After this Court denied the officers' motion for summary judgment, the parties proceeded to trial. Id. At trial, the jury found that a reasonable officer in the officers' positions would not have believed that Humbert was responsible for the rape before issuing the arrest warrant. Id. The jury ultimately determined that the officers were liable for malicious prosecution under § 1983 and

awarded Humbert $2.3 million in compensatory and punitive damages.  Id.  After trial, the district court granted the officers' motion for judgment as a matter of law, concluding that the officers were entitled to qualified immunity because they had probable cause to arrest Humbert.  Id. at *4.  Humbert appealed.  Id.

On appeal, the Fourth Circuit found that, drawing all reasonable inferences in Humbert's favor, the evidence indicated that one of the officers may have shown the victim Humbert's photo because the officer presumed that Humbert was the assailant and that action affected the victim's ability to identify Humbert as her attacker.  Id. at *6. The Fourth Circuit added that "the victim's subsequent statements that she could not positively identify Humbert without seeing him in person and hearing his voice due to the poor quality of the photos in the photobook further belied the [o]fficers' assertion that she positively identified Humbert."  Id.  The Fourth Circuit then concluded that the statement in the warrant application that "the victim positively identified Humbert as her attacker was false and the [o]fficers had an obvious reason to doubt its accuracy before including it in the warrant application."  Id.  Accordingly, the court further concluded, that "the inclusion of this false statement amount[ed] to at least recklessness."  Id.

Based on Humbert, the Court concludes that a reasonable jury could find that Officer Thomasson made a false statement in the Application with at least a reckless disregard for the truth.  Like the officer in Humbert, Officer Thomasson writes in his Application that Goodwin "positively identif[ied] Vincent June," to assert that Goodwin identified June as one of his assailants.  (ECF No. 27-6 at 3).  But, construing the

21

evidence in the light most favorable to June, Goodwin—like the victim in <u>Humbert</u>—did not identify June as being involved in the assault. Rather, the evidence indicates that Officer Thomasson brought up June's name four or five times before showing Goodwin the photo array because he may have presumed, based on the information from Officers DeLoatch and Bembe, that June was the assailant. (Goodwin 2d Aff. ¶ 25). The evidence further indicates that Goodwin identified June as someone he generally recognized. (<u>Id.</u> ¶ 29). Based on this evidence, a factfinder could reasonably conclude that when Officer Thomasson wrote in the Application that Goodwin identified June as one of his attackers, Officer Thomasson either had "a high degree of awareness" or "had obvious reasons to doubt" whether that statement was true. <u>Miller</u>, 475 F.3d at 627 (citations and internal quotation marks omitted); <u>see Humbert</u>, 2017 WL 3366349, at *6.

The Court must now determine whether the false statement was "material." To that end, the Court will set aside the statement to determine whether the "corrected" Application is still sufficient to establish probable cause. <u>Miller</u>, 475 F.3d at 628 (citation and internal quotation marks omitted).

"Probable cause is a 'practical, nontechnical conception' that addresses [] 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" <u>Bailey v. Kennedy</u>, 349 F.3d 731, 739 (4th Cir. 2003) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 231 (1983)). "Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry." <u>Wadkins v. Arnold</u>, 214 F.3d 535, 539 (4th Cir. 2000) (citing

Wong Sun v. United States, 371 U.S. 471, 479 (1963)). There is probable cause for an arrest when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Cloaninger, 555 F.3d at 334 (alterations in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). More specifically, there is probable cause to arrest an individual when the victim of an assault provides a reliable identification of that individual as one of the assailants. See Torchinsky, 942 F.2d at 262. Furthermore, in the context of applications for arrest warrants, "[s]peculation does not equate [to] probable cause." Sykes, 625 F.3d at 308 (quoting McClain, 444 F.3d at 563).

The Court again finds Humbert to be instructive. There, the Fourth Circuit found that a corrected warrant application would state that the BPD conducted an investigation and one of its officers suggested that Humbert might be the assailant by showing his photo to the victim and identifying him as the attacker. Humbert, 2017 WL 3366349, at *6. The corrected application would also state that the victim did not positively identify Humbert as her attacker. Id. The Fourth Circuit concluded that the corrected warrant application would not have established probable cause to arrest Humbert because it was "clear that the probable cause supporting the [o]fficers' application was based primarily, if not entirely, on the false assertion that the victim positively identified Humbert. Id. at *7. The Court further concluded, therefore, that the false statement that the victim positively identified Humbert as her attacker, as well as the omission that one of the

23

officers showed the victim a photo of Humbert and identified him as the attacker, were material.  Id. at *8.

Here, the corrected Application would provide that Officer Thomasson suggested that June might be the assailant by asking Goodwin about him four of five times before showing Goodwin the photo array.  The corrected Application would also provide that when Officer Thomasson presented the array, Goodwin merely identified June as someone he generally recognized—not someone involved in the assault.  Like in Humbert, the probable cause supporting the Application "was based primarily, if not entirely, on the false assertion that the victim positively identified" June as one of his attackers.  Id. at *7.  The Court concludes that Officer Thomasson's omission that he asked Goodwin about June four of five times and his false statement that Goodwin identified June as his attacker were material because the corrected application would not provide probable cause for June's arrest.  See id. at *7–8.

As the Fourth Circuit explained in Humbert, when a court determines that an arrest warrant is invalid because it contains materially false statements or omissions, the court must also consider whether probable cause otherwise existed.  Id. at *8.  Indeed, despite the Court's conclusion that the Application was invalid, June's seizure may nevertheless be justified if Officer Thomasson "had adequate knowledge independent of the warrant to constitute probable cause."  Id. (quoting United States v. White, 342 F.2d 379, 381 (4th Cir. 1965)); see Robinson v. City of S. Charleston, 662 F.App'x 216, 221 (4th Cir. Oct. 24, 2016) (unpublished) ("[P]robable cause is sufficient to justify a public arrest under

the Fourth Amendment, regardless of the validity of the arrest warrants obtained by the officers or any deficiencies in the affidavits supporting them.").

The Court concludes that disregarding the contents of the Application, Officer Thomasson did not otherwise have probable cause to arrest June. Probable cause to arrest an individual exists when the victim of an assault reliably identifies that individual as one of the assailants. See Torchinsky, 942 F.2d at 262. Here, construing the evidence in the light most favorable to June, Goodwin did not reliably identify June as one of his attackers. Instead, Goodwin only identified June as someone he generally recognized after the police asked Goodwin about June four or five times and led Goodwin to believe that June might be involved in the assault. (Goodwin 2d Aff. ¶¶ 25, 29). In the absence of a reliable identification of June as one of the attackers, Officer Thomasson had, at best, reasonable suspicion regarding June's involvement in the assault. See Humbert, 2017 WL 3366349, at *9. And when "information from or about a putative victim of crime would lead a reasonable officer to be suspicious, the officer should conduct further investigation before making an arrest." Dale v. Mayor of Balt., No. WDG-14-2152, 2015 WL 5521815, at *7 (D.Md. Sept. 15, 2015) (quoting United States v. Beckham, 325 F.Supp.2d 678, 687–88 (E.D.Va. 2004)) (internal quotation marks omitted).

### b. Clearly Established Constitutional Right

Because the first prong of the qualified immunity analysis is genuinely disputed, the Court proceeds to the second prong. See Batten, 324 F.3d at 293–94. This prong comprises a three-step process. First, the court identifies "the specific constitutional right

allegedly violated." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990). Second, the court inquires whether at the time of the alleged violation, that right was "clearly established." Id. Third, the court further inquires "whether a reasonable person in the official's position would have known that his conduct would violate that right." Id.; see Cloaninger, 555 F.3d at 331 (explaining that a right is "clearly established" when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (quoting Saucier, 533 U.S. at 202)).

The first two steps in this process present pure questions of law for the courts. Collinson, 895 F.2d at 998. The third step "may sometimes require factual determinations respecting a defendant's conduct and its circumstances," but the ultimate application of the objective analysis in the third step "is also a matter of law for the court." Id.; see Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005) ("[W]e hold that the legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court, not by the jury.").

The third step in this process, the "reasonableness inquiry," "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson v. Callahan, 555 U.S. 223, 244 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). The operation of the reasonableness inquiry "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639. The Supreme Court has instructed that the right an official is alleged, or proven, to have violated must have

been "clearly established" in a highly particularized sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (internal citation omitted).

Officer Thomasson argues that even accepting that it is genuinely disputed whether he had probable cause to arrest June, he is entitled to qualified immunity because he was reasonably mistaken in believing probable cause was present. To be sure, the qualified immunity standard makes an allowance for mistaken judgments regarding the presence of probable cause—"[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter, 502 U.S. at 227 (quoting Anderson, 483 U.S. at 641). But June does not allege only that Officer Thomasson did not have probable cause to arrest him. Rather, June alleges that Officer Thomasson violated June's right to be free from arrests not supported by probable cause that occur specifically because an officer deliberately or with reckless disregard for the truth makes material false statements or omits material facts in a warrant application. The Court must determine whether that specific right was clearly established.

As the Fourth Circuit discussed in Miller—a 2007 case—"the Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or 'with reckless disregard for the truth' makes material false

statements or omits material facts." 475 F.3d at 631 (citing <u>Franks</u>, 438 U.S. at 155).

Also, over two decades ago, the Fourth Circuit explained that "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false." <u>Id.</u> at 632 (quoting <u>Smith v. Reddy</u>, 101 F.3d 351, 355 (4th Cir. 1996)) (internal quotation marks omitted). The Court concludes, therefore, that the right which June alleges Officer Thomasson violated—the right to be free from unreasonable seizures that occur when an officer deliberately or with reckless disregard for the truth makes material false statements or omits material facts in a warrant application—was clearly established in 2011 when Officer Thomasson submitted the Application and arrested June. No reasonable police officer in Officer Thomasson's position could believe that the Fourth Amendment permitted an officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause.

To the extent that June alleges that outside the Application, Officer Thomasson did not otherwise have probable cause to arrest June, the Court concludes that a reasonable officer in Officer Thomasson's position would have understood that arresting June was unconstitutional because there was no probable cause to support the seizure. At the time Officer Thomasson arrested June, "[t]he law made clear that arresting and initiating legal process against a person without probable cause amounts to a seizure in violation of the Fourth Amendment." <u>Humbert</u>, 2017 WL 3366349, at *10 (first citing <u>Lambert v. Williams</u>, 223 F.3d 257, 261–62 (4th Cir. 2000); then citing <u>Brooks v. City of</u>

Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)).  At a more particularized level, the law also made clear that probable cause to arrest an individual exists when the victim of an assault reliably identifies that individual as one of the assailants.  See Torchinsky, 942 F.2d at 262.  Goodwin never identified June as one of his attackers, and any identification from Goodwin was unreliable because the police asked Goodwin about June four or five times before they showed him the photo array.

Accordingly, based on the present record, Officer Thomasson is not entitled to qualified immunity.  The Court, therefore, will again deny his Motion for Summary Judgment—this time with prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Officer Thomasson's Motion to Alter or Amend (ECF No. 62) as untimely.  After sua sponte reconsidering the Court's December 20, 2016 Order and conducting a complete qualified immunity analysis, the Court will deny with prejudice Officer Thomasson's Motion for Summary Judgment (ECF No.  27).  A separate Order follows.

Entered this 24th day of August, 2017

/s/

_____
George L. Russell, III
United States District Judge